IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KEN GAZIAN, et al., | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-cv-4326-O-BK |
| | § | |
| WELLS FARGO BANK, | § | |
| HUBERT KELLY and | § | |
| KELLY & KELLY, P.C., | § | |
|     Defendants. | § | |

**FINDINGS, CONCLUSION and RECOMMENDATION**

Pursuant to the District Court's Order of Reference (Doc. 14), Defendant Wells Fargo Bank's *Motion to Transfer Case out of District/Division* (Doc. 5), and Defendants Hubert Kelly and Kelly & Kelly, P.C.'s *Motion to Dismiss for Lack of Personal Jurisdiction, or in the Alternative Transfer Venue* (Doc. 12), are before the Court for a recommendation. After considering the relevant pleadings and applicable law, it is recommended that Defendants Hubert Kelly and Kelly & Kelly, P.C.'s motion to dismiss be **DENIED**, and that both motions to transfer be **GRANTED**.

This action stems from a financial dispute between Ken Gazian, Pierre Investments, Inc. and Aragaza Foods, Inc. (collectively, "Plaintiffs") and Wells Fargo Bank, Hubert Kelly and Kelly & Kelly (collectively, "Defendants"). (Doc. 1-3). In September 2011, Plaintiffs, who are citizens of Texas, allege that they were introduced to Defendant Hubert Kelly ("Kelly") and his law firm Kelly & Kelly, P.C. (collectively "the Kelly Defendants"), Arizona residents, who sought short-term capital from Plaintiffs to secure the purchase of $100,000,000 worth of United States securities sold on the London Stock Exchange. *Id.* at 3. Plaintiffs were advised by Defendant Kelly that their $80,000 investment would result in a $280,000 return secured and processed by Defendant Wells Fargo. *Id.* Plaintiffs claim they sought and received assurances

1

from Wells Fargo of the Kelly Defendants' reputations. *Id.* at 3-4. As a result, they subsequently wired $80,000 from their Dallas Compass Bank branch to an account Kelly & Kelly maintained at Wells Fargo. *Id.*; Doc. 18 at 7. Wells Fargo allegedly "endorsed" and "signed" an Irrevocable Commitment that (1) guaranteed that the Kelly Defendants had at least $280,000 on account; (2) confirmed the funds were "good, clean and cleared funds of non-criminal origin and [were] from a legal source;" and (3) assured that the $280,000 would be maintained by Wells Fargo for payment to Plaintiffs on the date of maturity. (Doc. 1-3 at 5-6).

The second transaction between the parties was for the purchase of Park Plaza Tower in Dallas, Texas. *Id.* at 6. Plaintiffs allege that they executed an escrow agreement for the purchase of the property with the Kelly Defendants, by which $250,000 of the anticipated $280,000 return on Plaintiff's original investment would be deposited into Kelly & Kelly's escrow account at Wells Fargo to serve as collateral for the purchase. *Id.* In addition, Hubert Kelly, along with his business partners, would provide $5,000,000 toward the purchase of Park Plaza. *Id.* Plaintiffs further allege the $250,000 was not deposited in the escrow account as promised and, consequently, the contract to purchase Park Plaza was voided. *Id.* Plaintiffs aver that after the return secured by the Irrevocable Commitment came due, Wells Fargo informed Plaintiffs that Kelly had closed the Kelly & Kelly account at Wells Fargo and transferred the funds to Chase Morgan Bank. *Id.* at 7.

In their *Second Amended Petition,* Plaintiffs allege (1) fraudulent nondisclosure, negligent misrepresentation, and breach of contract against all Defendants; (2) breach of express and implied warranty of services, Deceptive Trade Practices Act (DTPA) violations and negligence against Defendant Wells Fargo; (3) and negligent hiring and retention against Defendant Kelly & Kelly. *Id.* at 14.

On October 26, 2012, Defendant Wells Fargo removed this action from County Court at Law No. 2 in Dallas County to this Court. (Doc. 1). Subsequently, Defendant Wells Fargo filed its *Motion to Transfer Venue* to the United States District Court for the District of Arizona, Phoenix Division. (Doc. 5). Additionally, the Kelly Defendants filed their *Motion to Dismiss for Lack of Personal Jurisdiction*, *or in the Alternative Transfer Venue*, arguing that Plaintiffs' complaint should be dismissed for lack of personal jurisdiction or, alternatively, transferred to the United States District Court for the District of Arizona, Phoenix Division. (Doc. 12 at 1-2).

## I. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

The Court first addresses the Kelly Defendants' *Motion to Dismiss for Lack of Personal Jurisdiction*. Although the issues of personal jurisdiction and venue overlap, the Court has to first determine whether it has personal jurisdiction over a non-resident defendant and, thus, authority to enter a binding order as to any other issue relating to that defendant, including venue. *See Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 623 n.2 (5th Cir. 1999) ("Personal jurisdiction is an essential element of the jurisdiction of a district court, without which it is powerless to proceed to an adjudication.").

Federal Rule of Civil Procedure 12(b)(2) allows for dismissal of an action where the Court lacks personal jurisdiction over a defendant. The plaintiff bears the burden of proving that a nonresident defendant is subject to the Court's jurisdiction. *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992). A federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant (1) as permitted under the state's long-arm statute; and (2) to the extent permitted by the Due Process Clause of the Fourteenth Amendment. *Pervasive Software, Inc. v. Lexware GMBH & Co. KG,* 688 F.3d 214, 220 (5th Cir. 2012). "Because the Texas long-arm statute extends to the limits of federal due process, the

two-step inquiry collapses into one federal due process analysis." *Mullins v. TestAmerica Inc.*, 564 F.3d 386, 398 (5th Cir. 2009) (quoting *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)).  To satisfy the requirements of due process, the plaintiff must demonstrate: "(1) that the non-resident purposely availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the state; and (2) that the exercise of jurisdiction does not offend 'traditional notions of fair play and substantial justice." *Id.* (quoting *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)).

"Jurisdiction may be general or specific." *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 484 (5th Cir. 2008).  Specific jurisdiction exists when the plaintiff's claim against the non-resident defendant arises out of or relates to activities that the defendant purposefully directed at the forum state. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).  In contrast, general jurisdiction requires the defendant to have maintained "continuous and systematic" contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984).  Under the facts of this case, the only concern is whether the Court may exercise specific jurisdiction over the Kelly Defendants.

Finally, where, as here, the court chooses not to conduct an evidentiary hearing, the plaintiff need only make a prima facie showing in support of jurisdiction. *Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 381 (5th Cir. 2003).  The Court must accept the plaintiff's uncontroverted factual allegations as true and resolve all factual disputes in its favor. *Felch v. Transportes Lar-Mex SA de CV*, 92 F.3d 320, 326 (5th Cir. 1996).  The Court, however, is not permitted "to credit conclusory allegations, even if uncontroverted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 86, 869 (5th Cir. 2001).

*Minimum Contacts*

The Kelly Defendants argue this Court lacks specific jurisdiction over them because they did not purposefully direct any activities at Texas. (Doc. 12 at 6). They claim they neither engaged in business in Texas, nor were they directly involved in the transaction to purchase Park Plaza Tower. *Id.* at 7. Rather, they contend that Arizona is the "focal point of both the story and harm suffered" by Plaintiffs. *Id.* at 1, 7.

Plaintiffs counter that the Kelly Defendants purposefully directed activities at Texas, as Plaintiffs never left this state, but were induced to participate in the transactions at issue through numerous telephone conversations and email and text messages the Kelly Defendants directed to them here. (Doc. 18 at 9-14, 18). Plaintiffs further assert that the substantive contractual transactions made the basis of this suit concern the purchase of real property located in Dallas, Texas. *Id.* at 16. They also argue that Texas has a substantial interest in providing a forum for Texas residents who have been injured in fraudulent schemes. *Id.* at 18.

Construing Plaintiffs' allegations as true, as the Court must, Plaintiffs have made a prima facie showing of personal jurisdiction over the Kelly Defendants involving at least some of Plaintiffs' claims.[1] Specifically, Plaintiffs have alleged:

(1)   Hubert Kelly, in an effort to induce Plaintiffs' participation, personally assured them, via telephone call to Plaintiffs' Dallas office, that the initial transaction was legitimate and would prove profitable;

(2)   Miko Wady, an employee of Kelly & Kelly, also personally assured Plaintiffs of the legitimacy of the transaction through telephone calls placed to Plaintiffs' Dallas office;

(3)   Hubert Kelly signed the seemingly valid Irrevocable Commitment, which was on Kelly & Kelly letterhead and addressed to Plaintiffs' Dallas, Texas address; and

---

[1] *See Streber v. Hunter*, 221 F.3d 701 (5th Cir. 2000) (holding that the exercise of personal jurisdiction was appropriate because at least some of the allegations forming the basis of the lawsuit arose from Defendant's contacts with Texas).

(4)   Vern Slocum, the Kelly Defendants' business partner, personally travelled to Dallas to obtain Plaintiff Gazian's signature on the relevant documents relating to both transactions.

*Id.* at 9-14. Plaintiffs contend these representations directly give rise to their intentional tort claims of fraudulent misrepresentation and negligent misrepresentation, as well as their breach of contract claims. *Id.* at 9.

The law supports Plaintiffs' position. An out-of-state party's communications with a party in a forum state can provide a sufficient basis for specific personal jurisdiction in that forum. *See, e.g., Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999) ("When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment. The defendant is purposefully availing himself of 'the privilege of causing a consequence' in Texas."). In such cases, when the actual content of communications with a forum gives rise to a cause of action for an intentional tort, the communication alone can constitute purposeful availment. *See id*.

Plaintiffs further assert that for purposes of establishing personal jurisdiction, Wady and Slocum's contacts with Texas are attributable to the Kelly Defendants under agency principles, and that all of Hubert Kelly's actions should be attributed to Kelly & Kelly under partnership principles. *Id.* at 15. Contrary to the Kelly Defendants' argument, the facts taken in the light most favorable to Plaintiffs support the existence of an agency/principal relationship between Hubert Kelly, Wady and Slocum and Kelly and Kelly. Under Texas law, "although an agency relationship cannot be presumed, an agency relationship may be implied from the conduct of the parties or from the facts and circumstances surrounding the transaction in question." *Harding Co. v. Sendero Res., Inc.*, 365 S.W.3d 732, 741-42 (Tex. App.—Texarkana 2012) (collecting cases). Moreover, though actual authority is demonstrated through explicit action from the

principal to the agent, apparent authority can be created through the conduct of the principal in allowing an agent to represent himself with authority. *Walker Ins. Servs. v. Bottle Rock Power Corp.*, 108 S.W.3d 538, 550 (Tex. App.—Houston 14th Dist. 2003) (collecting cases).  Here, regardless of whether Wady was an employee of Kelly & Kelly, an agency relationship can be implied through Wady's alleged actions in communicating with Plaintiffs regarding the transaction involving Kelly & Kelly.  By all outward appearance, Wady's actions indicated that he was operating as intermediary for Kelly & Kelly in facilitating the transactions.

Moreover, the Court finds unpersuasive the Kelly Defendants' averment that their sole involvement in both transactions was as Wady's legal counsel. (Doc. 23 at 2, 5).  Equally unpersuasive are Hubert Kelly claims that he never made representations of fact to Plaintiffs regarding the transactions at issue. *Id*.  Again, on the issue of personal jurisdiction, the Court must accept Plaintiffs' version of the relevant facts.  Moreover, even if it is true that Plaintiffs first approached the Kelly Defendants about doing business (*Id*. at 3), that does not diminish the significance of the Kelly Defendants' subsequent, repeated communications with Plaintiffs, who were in Texas, which Plaintiffs contend underpin their claims for fraudulent misrepresentation, negligent misrepresentation and breach of contract. (Doc. 18 at 9).  *See Wien Air Alaska, Inc.*, 195 F.3d at 213 (holding that a defendant's phone calls, faxes and letters sent to a Texas plaintiff that included allegedly fraudulent misrepresentations about a financial transaction were sufficient to confer personal jurisdiction over the defendant); *and Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001) (holding that a defendant's communication with a Texas plaintiff that consisted of an allegedly intentional misrepresentation demonstrated purposeful availment of the benefits and protections of Texas law).

*Fair Play and Substantial Justice*

Once a plaintiff establishes minimum contacts between the defendant and the forum state, the burden shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable. *Central Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 384 (5th Cir. 2003). "[O]nly in rare cases will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Berry v. Lee*, 428 F. Supp. 2d 546, 556 (N.D. Tex. 2006) (Fitzwater, C.J.) (quoting *WRR Indus., Inc. v. Prologis*, 2006 WL 247894, at *4 (N.D. Tex. Feb. 2, 2006) (Lindsay, J.)). "When determining the fundamental fairness issue this court will normally examine (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies." *Id.* (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113, (1987); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

The Kelly Defendants argue that this Court's exercise of jurisdiction would offend traditional notions of fair play and substantial justice because of the burden on the Kelly Defendants to defend a case in Texas, and the lack of Texas' interest "in adjudicating the alleged legal malpractice dispute." (Doc. 12 at 9). They further aver that greater part of the witnesses and evidence relevant to this suit are located in Arizona, and describe the relationship between the facts of this case and their activities as "too attenuated to satisfy specific jurisdiction's due-process concerns." *Id.* Plaintiffs assert that Texas has an interest in providing a forum for Texas residents who are injured by intentional acts that result in a fraudulent scheme. (Doc. 18 at 18).

The Court concludes that fundamental fairness bodes in favor of the Court's exercise of personal jurisdiction over the Kelly Defendants. Contrary to the Kelly Defendants' assertions, the "State of Texas has an interest in protecting its citizens from the 'tortious conduct of nonresidents aimed at its own residents.'" *Mannatech, Inc. v. K.Y.C., Inc.*, 3:06 CV 0813, 2006 WL 2216033, at *3 (N.D. Tex. Aug. 3, 2006) (Fitzwater, C.J.) (quoting *Busch v. Robertson*, 3:05-CV-2043-L, 2006 WL 1222031, at *6 (N.D. Tex. May 5, 2006) (Lindsay, J.); *see also Eckardt v. Hardeman*, 03-98-00274-CV, 1999 WL 33226, at *4 (Tex. App.—Austin, Jan. 28, 1999) ("State of Texas has an interest in protecting its citizens from tortious conduct and breaches of contract."). Moreover, Plaintiffs, who likely will also be witnesses, obviously have strong interest in obtaining convenient and effective relief in Texas. The judicial system's interest in efficient adjudication additionally favors Texas because the alleged misrepresentations were directed at Texas and, thus, potentially violated of Texas law. The Court finds that any inconvenience to the Kelly Defendants by the Court's exercise of personal jurisdiction over them is outweighed by the foregoing factors.

Based on the foregoing, the Kelly Defendants' Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction (Doc. 12) should be **DENIED**.

## II. MOTION TO TRANSFER VENUE

All Defendants request a discretionary transfer of venue under 28 U.S.C. § 1404(a) to the United States District Court of Arizona, Phoenix Division.[2] (Doc. 5 at 2). They contend that all or most of the events giving rise to Plaintiffs' claims occurred in Phoenix, Arizona, and that the

---

[2] In its *Motion to Transfer Venue*, Defendant Wells Fargo also argued that the Northern District of Texas is an improper venue under 28 U.S.C. § 1406. (Doc. 5 at 2). However, in its reply, Wells Fargo all but abandons those arguments in favor of its request for discretionary transfer under 28 U.S.C. § 1404(a).[2] (Doc. 17 at 1). The Kelly Defendants claim that there is a split in authority as to whether § 1406 or §1404(a) applies; nonetheless, they join in Wells Fargo's arguments for transfer under 28 U.S.C. § 1404(a). (Doc. 23 at 8).

bulk of the witnesses and documentary evidence is located there.  (Doc. 5 at 2; Doc. 12 at 10). Plaintiffs argue that Defendants' motions should be denied because Defendants have not met their burden to show that transfer would be convenient for the parties and witnesses and in furtherance of justice.  (Doc. 7 at 8; Doc. 18 at 19).  Plaintiffs likewise claim that most of the witnesses and evidence are located in Dallas, and that Dallas is the site of the transactions underlying their claims.  (Doc. 7 at 9).

**Applicable Law**

Section 1404(a) of Title 28 provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to another district or division where it might have been brought."  28 U.S.C. § 1404(a).  In determining whether a transfer is appropriate, a court must first determine if the suit could have been filed in the alternate venue, and then weigh the parties' private interests in convenience and the public interest in the fair administration of justice.  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). The private interest factors include "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."  *In re Volkswagen of Am., Inc. II*, 545 F.3d 304, 315 (5th Cir. 2008).  The public interest factors include "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Id.*  The burden is the defendant's to demonstrate why venue should be changed.  *In re Volkswagen of Am., Inc. II*, 545 F.3d at 314 n.10 (citing *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966)).

Moreover, the "court cannot transfer a case where the result is merely to shift the inconvenience of the venue from one party to the other." *Sivertson v. Clinton*, No. 3:11–CV–0836–D, 2011 WL 4100958, at *3 (N.D. Tex. Sept 14, 2011) (Fitzwater, C.J.).

Plaintiffs do not contest that this action could have been brought in the District of Arizona. *See* 28 U.S.C. § 1391(b) (venue in a diversity case is appropriate in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought). Thus, the determining factor is whether the convenience of the parties and witnesses and the interest of justice would be served if this action was tried in the Phoenix Division of the District of Arizona rather than the Northern District of Texas.

*Private Interest Factors*

Defendants claim that transfer would facilitate access to the bulk of the relevant documentary evidence, which is located in Arizona where the Kelly Defendants and the Wells Fargo branch the subject of this action are. (Doc. 5 at 6). Defendants additionally aver that all of Plaintiffs' dealings were with individuals/potential witnesses located in Arizona. *Id.* Plaintiffs counter that all of their documentary evidence and witnesses relevant to Plaintiffs' wire transfers from BBVA Compass Bank, as well as the subject real property and documents pertaining to its survey are located in Texas. *Id.* at 17.

"The Fifth Circuit [has] held that despite technological advances that [have] made the physical location of documents less significant, the location of sources of proof remains a meaningful factor in the transfer analysis." *AT&T Intellectual Prop.*, 2009 WL 774350, at *2; *In*

11

*re Volkswagen II*, 545 F.3d at 316 ("the sources of proof requirement is a meaningful factor in the analysis") (internal citations omitted). In the case *sub judice*, Plaintiffs' claims stem from investment and contractual agreements facilitated by the Kelly Defendants and endorsed by Defendant Wells Fargo. Under the facts posited their complaint, it would appear that Defendants maintain greater access to the source of the evidence regarding the parties' agreements and records of financial transactions, as they are located in Arizona. Moreover, Plaintiffs do not suggest that the source of the evidence they anticipate offering regarding the alleged agreements is in Texas. Consequently, this factor slightly favors transferring this case to Arizona. *See AT&T Intellectual Prop.,* 2009 WL 774350, at *4 (holding that this factor slightly favored transfer where defendant showed that relevant documents resided in transferee district).

As is germane to the Court's decision, Defendants aver that the parties have collectively identified eight people -- Plaintiff Gazian, Defendant Kelly, Wells Fargo branch manager Randy Luecro, Wells Fargo service manager Bryan Miranda, and Kelly & Kelly employees Miko Wady, Scoville Walker, Dean Cobb, and Vern Slocum -- as potential witnesses. (Doc. 17 at 6). According to Defendants, Kelly, Luecro, Miranda, and Wady all reside in Arizona, Plaintiff Gazian resides in Texas, and the three latter individuals reside outside of both Arizona and Texas. *Id.* at 6. Plaintiffs contend that their potential witnesses also include Texas residents Bill Colvin, and possibly witnesses from BBVA Compass Bank or Republic Title of Texas. (Doc. 7 at 18-19). Because this Court's subpoena power does not extend to Arizona, the availability of compulsory process to secure the attendance of witnesses weighs in favor of transfer the Arizona District, Phoenix Division. *See* Fed. R. Civ. P. 45. Moreover, under this Circuit's 100-mile rule, "when the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct

relationship to the additional distance to be traveled." *In re Volkswagen II*, 545 F.3d at 317. While Plaintiffs and their three anticipated witnesses[3] would undoubtedly incur expenses in traveling to Phoenix, it is significantly less than the expense the Defendants and the majority of witnesses who currently reside in Arizona would incur to travel to Dallas.  Moreover, by engaging in transactions with persons and entities located in Arizona, Plaintiffs should have anticipated the possibility of having to travel to Arizona to vindicate their rights in the event of a breach.

The Northern District of Texas is clearly less convenient to the majority of the witnesses than the Phoenix Division of the District of Arizona.  Thus, the private interest factors support transfer.

*2. Public Interest Factors*

In discussing the first of the public interest factors, neither party has presented any evidence that the administrative difficulties in Texas would be greater than in Arizona, therefore, this factor is neutral.  The second factor is local interest in the dispute.  There is local interest of this case in Texas because it involves a Texas resident, but there is also an interest in Arizona, where Defendants reside.   Significantly, Arizona is where most of the conduct complained of occurred.  Thus, this factor favors Arizona.

Continuing the analysis, Plaintiffs correctly assert that the Northern District of Texas is more familiar with their claim under the Texas Deceptive Trade Practices Act.  (Doc. 7 at 21). On the other hand, the escrow agreement central to Plaintiffs' claims explicitly states that it is governed by Arizona law.   Thus, because this case has the potential to involve both Arizona and

---

[3]   Although the Court has included them for analysis purposes, based on Plaintiffs' claims, it appears that the potential witnesses from BBVA Compass Bank and Republic Title of Texas could possibly be records custodians.

Texas law claims, this factor favors neither venue. Considering the public factors as a whole, however, the Phoenix Division of the District of Arizona is the most convenient forum.

Accordingly, for the convenience of the parties and witnesses and in the interest of justice, it is recommended that Defendant Wells Fargo Bank's *Motion to Transfer Case out of District/Division* (Doc. 5) be **GRANTED**, and Defendants Hubert Kelly and Kelly & Kelly, P.C.'s *Motion to Dismiss for Lack of Personal Jurisdiction and Alternative Motion to Transfer Venue* (Doc. 12) be **GRANTED IN PART** as to the alternate motion to transfer, and **DENIED** in all other respects.

**SO RECOMMENDED** on June 11, 2013.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

      A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE